UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------x
WENDY TRELLA                   :
         Plaintiff,            :
                               :
v.                             :    CIV. NO. 3:15-cv-1211 (AWT)
                               :
WAL-MART STORES, INC.,         :
WAL-MART STORES EAST, INC. &   :
WAL-MART STORES EAST, L.P.     :
         Defendants/Third-     :
         Party Plaintiffs,     :
                               :
v.                             :
                               :
MIDDLESEX HEALTH SYSTEM, INC., :
D/B/A MIDDLESEX HOSPITAL,      :
         Third-Party           :
         Defendant.            :
-------------------------------x
```

<u>RULING ON MOTION TO DISMISS</u>

    Third Party Defendant Middlesex Health System, Inc. d/b/a
Middlesex Hospital ("Middlesex Hospital") has moved to dismiss the
Third Party Complaint filed by Walmart Stores, Inc., Wal-Mart
Stores East, Inc. and Wal-Mart Stores East, L.P. (collectively
"Wal-Mart").  For the reasons set forth below, the motion to
dismiss is being denied.


I.   <u>LEGAL STANDARD</u>

    Under Connecticut law, prior to filing a claim for medical
malpractice, a plaintiff must first conduct a "reasonable inquiry
. . . to determine that there are grounds for a good faith belief
that there has been negligence in the care or treatment of the

claimant." Conn. Gen. Stat. Ann. § 52-190a(a). Furthermore:

> [t]he complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant.  To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion.

Conn. Gen. Stat. § 52-190a(a).  "The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for dismissal of the action."  Conn. Gen. Stat. § 52-190a(c).  The Connecticut Supreme Court has held compliance with this statute is "a precondition to effective service of process for the initiation of a medical malpractice action." Morgan v. Hartford Hosp., 301 Conn. 388, 400-01 (2011).

The court sitting in diversity applies Connecticut substantive law and federal procedural law.  '"The Second Circuit has not yet determined whether the requirement of a certificate of good faith in a medical malpractice action is a substantive or procedural requirement,"' but "this Court repeatedly has dismissed medical malpractice claims brought under Connecticut state law for failure to comply with Conn. Gen. Stat. § 52-190a." Gallinari v. Kloth, 148 F. Supp. 3d 202, 207 n.1 (D. Conn. 2015) (quoting Cornelius v. ECHN Rockville Gen. Hosp., No. 3:14-cv-00779 (JAM), 2014 WL 2986688, at *3 (D. Conn. July 1, 2014) (quoting Cole v.

-2-

Greene, No. 3:11-cv-00543 (SRU), 2013 WL 1759571, at *1 (D. Conn. Apr. 24, 2013))).  In so doing, courts in this district have treated motions to dismiss for failure to comply with § 52-190a as motions to dismiss for insufficient process under Fed. R. Civ. P. 12(b)(5).  See Slocum v. U.S. Dep't Veterans Affairs, No. 3:13-CV-501(SRU), 2014 WL 4161985, at *1 (D. Conn. Aug. 19, 2014) ("[B]ecause the Connecticut Supreme Court has held that the omission of a good faith certificate renders service of process ineffective, the district court should also treat the deficiency as a matter of insufficient service of process.").  Although Middlesex Hospital filed its motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6), it based its argument entirely on the alleged deficiency of service of process under § 52-190a, and accordingly, the court analyzes the motion as one brought pursuant to Rule 12(b)(5).

In assessing a Rule 12(b)(5) motion, a court must look to Rule 4, which governs the content, issuance, and service of a summons. Under Federal Rule of Civil Procedure 4(m):

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Id.  "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." Dickerson

-3-

v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010) (alteration in
original) (quoting Burda Media, Inc. v. Viertel, 417 F.3d 292, 298
(2d Cir. 2005)).

## II.  FACTUAL BACKGROUND

On September 14, 2013, while Plaintiff Wendy Trella
("Trella") was shopping at a Wal-Mart store in Wallingford,
Connecticut, a display of one-gallon apple juice boxes fell over
onto her.  Trella suffered the following as a result of this
incident: injuries to her cervical, dorsal, and lumbar spine;
injuries to her head, left shoulder, right hip, right buttock, and
right leg; disc protrusions to her lumbar spine; radiculopathy;
posttraumatic headaches; post-concussive syndrome; pain; spasms;
weakness; and limited range of motion in her neck, back, head,
left shoulder, right hip, right buttock and right leg.

On or about June 16, 2015, Trella was admitted to Middlesex
Hospital to undergo a surgical procedure.  Employees of Middlesex
Hospital placed Trella on an operating room table and administered
sedation.  After Trella was sedated, but before the surgical
procedure began, she was allowed to fall fully or partially off
the operating room table.  Trella alleges that as a result of this
incident, she sustained a head injury, a concussion, a laceration
to the head, cognitive loss, headaches and cognitive impairments.

Wal-Mart alleges that the injuries Trella suffered as a

-4-

result of the June 16, 2015 incident were caused by the
carelessness and negligence of Middlesex Hospital in that its
employees, servants, and/or agents, <u>inter</u> <u>alia</u>, failed to properly
secure Trella to the operating room table, failed to adequately
monitor her movements, and failed to provide adequate staffing so
Trella could be watched after she was sedated.  Wal-Mart further
alleges that if Trella prevails on her claim against Wal-Mart,
Middlesex Hospital is liable for all or a proportionate share of
the liability.

## III. <u>DISCUSSION</u>

Middlesex Hospital moves to dismiss the Third-Party Complaint
because Wal-Mart has failed to attach to it a good faith
certification and obtain a good faith expert opinion letter as
required by Conn. Gen. Stat. § 52-190a.  The motion to dismiss is
being denied because this is not a case where compliance with
§ 52-190a is required.

The Connecticut Supreme Court has set forth a framework for
distinguishing malpractice claims from claims involving ordinary
negligence:

> The classification of a negligence claim as either medical
> malpractice or ordinary negligence requires a court to
> review closely the circumstances under which the alleged
> negligence occurred.   [P]rofessional   negligence   or
> malpractice . . . [is] defined as the *failure of one
> rendering professional services* to exercise that degree of
> skill   and   learning   commonly   applied   under   all   the
> circumstances   in   the   community   by   the   average   prudent

-5-

reputable member of the profession with the result of
injury, loss, or damage to the recipient of those services.
. . . Furthermore, malpractice presupposes some *improper
conduct in the treatment or operative skill* [or] . . . the
failure to exercise requisite medical skill . . . . From
those definitions, we conclude that the relevant
considerations in determining whether a claim sounds in
medical malpractice are whether (1) the defendants are
sued in their capacities as medical professionals, (2) the
alleged negligence is of a specialized medical nature that
arises out of the medical professional-patient
relationship, and (3) the alleged negligence is
substantially related to medical diagnosis or treatment
and involved the exercise of medical judgment.

Boone v. William W. Backus Hosp., 272 Conn. 551, 562-63 (2005)

(alterations in original) (quoting Gold v. Greenwich Hosp. Ass'n,

262 Conn. 248, 254 (2002)).

Here, the material questions to be analyzed are whether "the

alleged negligence is of a specialized medical nature that arises

out of the medical professional-patient relationship," and whether

"the alleged negligence is substantially related to medical

diagnosis or treatment and involved the exercise of medical

judgment."

Middlesex Hospital has submitted the affidavit of Barbara

Thompson, RN, MSN, CNOR.  Thompson avers that:

The Hospital perioperative staff's conduct in positioning,
securing and monitoring Ms. Trella, a patient under
sedation on the operating room table awaiting imminent
surgery, involves conduct of a specialized nature and
entails the inherent exercise of medical/professional
judgment substantially related to the provision of
medical/surgical services.

There are professional nursing standards, contained in the
[Association of periOperative Registered Nurses ("AORN")]
*Guideline for Positioning the Patient* position statement.

-6-

> This position statement was developed by the AORN Recommended Practices Committee and was approved by the AORN Board of Directors.  It contains a series of recommendations germane to this topic.  This position statement was formulated with the intention of informing perioperative registered nurses' medical/professional decision[-]making, with the ultimate goal of minimizing the risk of perioperative complications, such as the subject incident.

Thompson Aff. 2, ¶¶ 10-11 (Doc. No. 57-1).  In addition, during her deposition, in response to the question "So with regard to positioning, that comes within the purview of the nursing staff?", Thompson testified as follows: "No.  It's – it's a team based directed by the physicians and anesthesia with nursing a part of it."  Thompson Dep. 71:8-12 (Doc. No. 57-1).

Thompson also testified during her deposition, with respect to positioning the patient, that "[c]hest rolls . . . are used to relieve some pressure off the chest" and that "[p]illows are also used to help support" so that "breathing is not inhibited." Thompson Dep. 57:1-12 (Doc. No. 45).  She then testified that pillows are used "under a knee so you can bend the knees or if the surgeon wants the back bent."  Id. at 57:16-17.

It is apparent from Thompson's testimony that the proper positioning of the patient is a material step in performing the surgery and is substantially related to the medical treatment, i.e. the surgery.  It is also apparent that the proper positioning of the patient involves the exercise of medical judgment, since the positioner must take into account the particular procedure

-7-

that is being performed.  However, it is not the positioning of
the plaintiff on the operating room table that is the basis for
the Third-Party Complaint.  Had the plaintiff been positioned
precisely as she was but not been allowed to fall off the table,
Wal-Mart would not be bringing its third-party claim.  That is
because its third-party claim is based on Middlesex Hospital's
failure to prevent Trella from falling off the operating room
table.  The court agrees with the view expressed by Dr. David B.
Burstein, M.D., that "[p]reventing Ms. Trella from falling off the
[operating room] table was not something that required any medical
training at all," but rather was "a matter of being attentive and
exercising common sense."  Burstein Decl. 1 (Doc. No. 56, at 13).

Middlesex Hospital contends that cases such as Consiglio v.
Streeto, 2009 WL 1055206, No. CV0650010967S (Conn. Super. Ct. Mar.
24, 2009), Simoneau v. Stryker Corp., 2014 WL 1289419, No. 3:13-
CV-1200(JCH) (D. Conn. Mar. 31, 2014), and Gill v. Am. Red Cross,
2013 WL 1149951, No. 3:12-CV-348(JBA) (D. Conn. Mar. 19, 2013),
support its position.  They do not.  Rather, they highlight the
difference between this case and ones where the alleged acts are
ones that do constitute medical malpractice.

In Consiglio, for instance, the court observed that a
"decision to permit [the plaintiff] to ambulate without
supervision in light of his specific medical conditions and taking
into account the treatment he had been rendered, including the

-8-

medications that had been administered to him, required a determination of a specialized medical nature." 2009 WL 1055206, at *4. In <u>Simoneau</u>, the plaintiff alleged that the hospital owed a duty to advise and warn her that there had been recalls of certain hip implants, and to alert her to the possibility that the hip implant being used in her procedure was defective. 2014 WL 1289419, at *4. Finally, in <u>Gill</u>, the plaintiff alleged that the defendants "were negligent in failing to perform appropriate tests prior to drawing Mr. Gill's blood, including 'pulse rate, blood pressure, temperature, hemoglobin, hematocrit and platelet count,' failed to: 'conduct the appropriate examination,' 'to follow proper protocol and take a thorough history,' and 'to monitor following the procedure.'" 2013 WL 1149951, at *1 (citations omitted). The facts in each of these cases involved an act or omission requiring the use of medical judgment, which is distinguishable from the facts alleged here. One need not have medical training nor exercise medical judgment to prevent a patient from falling off an operating room table.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Middlesex Hospital's Motion to Dismiss (Doc. No. 27) is hereby DENIED.

It is so ordered.

Signed this 7th day of March, 2017, at Hartford, Connecticut.

_____/s/ AWT_____
Alvin W. Thompson
United States District Judge